May it please the Court, my name is Ashley Mekaisa, Counsel for the Appellant. The sole issue to be determined today is whether an impartial trustee should be appointed to overhear a trustee deadlock pursuant to Section 302C5B of the Labor Management Relations Act. The Court should reverse the District Court's order and require that an arbitrator be appointed to break this deadlock for two primary reasons. First, Section 302C5B of the LMRA creates a compulsory statutory mechanism whereby an impartial trustee must be appointed to resolve a trustee deadlock. Second, disputes submitted for arbitration under the section of the LMRA are presumptively arbitrable. And lastly, the trustees in this case ultimately have the power and authority to make this modification, and the modification that they seek is merely an expansion of the definition of employer under the parties' trust agreement. Well ma'am, let me ask you this. Is amending the trust agreement, is it trust administration or trust policymaking? I would say that it involves trust administration. Because what the parties are seeking to do is allow other employers to be able to contribute to the fund and ultimately administer the fund under, administer the fund. Well, my follow-up question is, what contractual provision gives you the ability or power to amend the trust agreements? If you look at Section 12.01 of the trust agreements, it explicitly says that trustees of the fund have the authority to modify the trust agreements. I'm talking about the arbitrator. What contractual provision gives an arbitrator the ability or power to amend the agreement? Your Honor, within the trust agreements, there is not necessarily a provision that permits the arbitrator to do so. With respect to Section 302C5B of the LMRA, what it does is it creates a compulsory statutory mechanism to be able to break trustee deadlocks like in the present situation. And I think that becomes evident when you review Congress's intent in having enacted this statute. Section 302C5 of the LMRA requires that boards of trustees are equally represented by union and management trustees. I think in designing this provision, Congress was aware that this could potentially lead to deadlocks amongst boards of trustees, and there needed to be a mechanism for trustees to be able to break these deadlocks. And in national labor relations for the Amex Coal Company, the Supreme Court recognized this, and it highlighted and outlined that there are differences with respect to how disputes are resolved between an employer and union in the collective bargaining context versus disputes that are resolved pursuant to Section 302C5B of the Labor-Managed Relations Act. And in that case, the Supreme Court highlighted that under the NLRA, Congress explicitly rejected compulsory arbitration as a means of resolving collective bargaining disputes. Comparatively, when we look at the text of Section 302C5B, Congress here explicitly provides for compulsory resolution of deadlocks by neutral empires. To my second point, disputes submitted for arbitration under Section 302C5B are presumptively arbitrable, and in this case, it is the appellant's position that the management trustees failed to rebut the presumption of arbitrability inherent in these types of disputes. But that presumption doesn't exist when it's a provisional. We're talking about a provisional change. Your Honor, I see your point, however, I think in the district court's opinion with respect to the safety provision clause and expanding the scope of definition of employers, when you look at the definition of employers at present, that definition already contemplates permitting non-STA employers to be able to contribute into the fund. So, I do believe that the union has proposed a modification to permit a clarification on that definition under Section 1.01. Well, ma'am, let me ask you, I'm sorry, the basic provisions clause unambiguously forecloses an arbitrator from changing or modifying any basic condition within the agreement. It's what the activity is the subject of this appeal, isn't that a basic provision? In a sense, yes, and I, your Honor, I will agree to that. However, I think the district court in this case failed to take into account, again, it's a compulsory statutory mechanism and it's a very unique situation when trustees deadlock on an issue and an arbitrator in this case is in the shoes of an impartial trustee. So, therefore, so long as the trustees in this case have the authority to make this change or modification, which I argue that they do under Section 12.01, the arbitrator has the same powers and authorities as well. So, counsel, it sounds like, I just want to make sure I understand, it sounds like you're conceding that the, you know, change in the definition of employer would be a basic provision of the agreement, which would hurt you contractually, but you're saying that the statute is your vehicle for arbitration that overrides the agreement? Correct, because the arbitrator in this case would be considered an impartial trustee. And even in, you know, Senator Ball's statement, who was in charge, one of the two sponsors of this agreement, they highlight, they use the language impartial trustee. And in this case, the impartial trustee or arbitrator, if he were assigned to break this tie vote, he wouldn't, that's essentially what he would be doing. He would be breaking a tie. He's not writing any language. We're not asking him to give us a definition of employer. But the, and on that issue, I think Judge Floyd may have asked this earlier. Do you agree that for that issue, for you to prevail on that issue, that the definition of employer, we must decide that falls under the administration of the trust fund? Or do you not think that's a standard that applies? When you read all, Your Honor, when you read all of the cases on this issue with respect to Section 302C5B, I'm sure, as you know, there are very limited pieces in this, on this issue. But when you distill them, ultimately, Section 302C5 will apply. And you know, this issue could be in an administration of the trust, so long as the trustees of the case ultimately have the authority and the power to make this modification. And so long as the trustees do have that authority, I believe that it, that Section 302C5B is triggered. Well, let me ask you, go ahead, Judge Floyd. You're arguing in a circle because to have your reading, you would just eviscerate 302's restriction completely. Basically, if the trustees can do it, then everything is arbitrable at their deadline. That's what you just said. Your Honor, I would humbly disagree in the sense that there are going, not everything is arbitrable. You know, so long as the, the... One of which is basic provisions of the contract change, correct? In a sense, yes. Is that correct? Is that correct, counsel? One of those restrictions is that those are the basic provisions of the, that's the subject and that's not arbitrable under 302, correct? Like I stated earlier, I think it's essential here we have... I would like you to answer my question, counsel. I know it may be hard, maybe the whole thing may be difficult, it might be hard to give the answer. But it really is, it's a basic provision of the agreement, isn't it? The term employer, Your Honor? Yes. Yes, it is. And your vehicle for that is on the 302 and there is a clear restriction on the, by the very letter of the statute. I, Your Honor, I do not believe that section 302C5B provides a clear prohibition on the, an arbitrator or impartial trust being assigned to resolve this death law. Well, ma'am, did you make, did you make that stand in the shoes argument about an impartial arbitrator in the district? You made the argument? No, we did not, Your Honor. Wouldn't that issue be waived? I believe what we requested in the district court, Your Honor, is that the arbitrator would essentially have a stamp of, you know, you're required to stamp approval of or break the deadlock in this case. You argue that in the district court? I will have to confirm and I can double check the joint appendix on who that is. Now, going back to my argument, the trustees ultimately have the authority to amend the trust agreements and they have previously modified and expanded similar definitions in 1977. The parties have modified the definitional provisions with respect to the definitions of employees in this case back in 1977, demonstrating that, again, the trustees have the authority to make this type of modification. And again, this is evident under section 12.01 of the trust agreements, wherein that provision states the provisions of this agreement and declaration of trust must be, may be amended by the board of trustees. Here the trustees are, the union trustees are proposing something similar with respect to the definition of employers that are ultimately being able to contribute to the fund. Lastly, if this modification were to be blessed by an arbitrator, the union's proposed change would be, would not require alteration of other provisions of this agreement. And it's simply a request by the union trustees to permit non-STA employers to be able to As such, the union trustees in this case are requesting that the district court's order be reversed and that an impartial trustee be appointed to break the deadlock amongst the union and management trustee. Your honors, I'd like to reserve the rest of my time for rebuttal, unless you have further questions. Thank you, counsel. Mr. Collins. Michael Collins on behalf of the management trustees of the four funds at issue in this case, STA ILA pension fund, benefits fund, severance and annuity fund, and holiday and vacation fund. These funds are creations of the collective bargaining parties. In this particular case, the collective bargaining parties are represented on one side. The union is represented by the ILA locals, 333, 953, and 1429. On the management side, the STA is an association of all the employer members, as well as the ocean coin carriers and service companies at the port of Baltimore. There are collective bargaining agreements that apply and work to fund these particular financial benefit funds. They start with a master contract between the ILA and the USMX, which is the United States Maritime Alliance. The STA is a member of the USMX. USMX and the ILA negotiate an east coast to Galveston, Texas, agreement called a master contract that provides for a fringe benefit contribution that's used by the collective bargaining parties and individual ports to fund these particular fringe benefit programs. Baltimore is very fortunate to have some very highly funded programs, including a pension plan that far exceeds all the pension plans amongst all the ILA represented ports in the United States. The motion that was made was that anyone who signs an agreement with the ILA or its locals should be deemed an employer under the agreement. That is clearly, as council has conceded on behalf of the union, a change in the basic provision of all four of these agreements and creates literal havoc when you talk about how you would administer such a change in a multi-employer environment such as the one that we have. In terms of just looking at the LMRA and how that might apply in this case, this is not an issue involving the administration of the funds. They want to transform the relationships of the parties conceivably with this motion should it go forward. A member employer of a failing pension plan in Savannah could simply glob onto our pension fund in Baltimore and suddenly you have an employer with a contract with the ILA paying contributions into our funds and gaining the benefits of a fund that is firmly in the green zone, for example. That is not something that is ever contemplated by the parties. That is why there is a specific restriction on what an arbitrator can and cannot do. The provisions clause makes it very clear the arbitrator can never be in a position where he is amending or modifying a basic principle of the agreement. The union has conceded that this is a basic principle of the agreement, the definition of employers. What we have here then is a provisions clause that bars the appointment of an arbitrator as some type of neutral stand in the shoes of a trustee. He cannot stand in the shoes of a trustee because he is not permitted to under the express conditions of the contract. The district court was quite right. The idea that he is just standing in the shoes of a trustee, it is a difference without a distinction in terms of his inability to modify or amend the contract and that is clearly what they are trying to do here. If you look at the case law that governs this area, it is clear that although a contract may contain an arbitration clause, the court has still got to look at that arbitration clause. I'm sorry, I don't know what. My computer somehow takes my phone even when I have it turned off. My apologies. To get back to where I was, in terms of the LMRA, it is pretty clear that it doesn't apply where there is a specific and explicit in this case provision that denies the arbitrator an opportunity to amend a basic provision. That is what we have here. It seems to me that the unions conceded all the points that were set forth by the lower court. The lower court found that this positive question was whether the definition of the term employer. The court found that there is explicit language in the trust agreements that the arbitrator does not have the power or authority to change or modify any basic provisions of the agreement. The bargaining parties placed restrictive language with respect to the arbitrator's authority to change or modify the agreement. The lower court determined that in a legal document, the word provision refers to a clause in a statute contract of a legal document looking to Black's Law Dictionary under Merlin Law's objective view in terms of contracts, ordinary meaning of the word provision. This is, as the union has noted and conceded, a basic provision of the contract. And the court went on to find that in the context of a series of agreements established between the union and a management association, the court is compelled to conclude that the definition of which entities constitute employers under the agreement unambiguously constitutes a basic provision of the agreement. We agree. The court was similarly unpersuaded by the plaintiff's argument that the arbitrator wouldn't be changing any basic provisions to the agreement, but only deciding to implement the plaintiff's motion to make a change. But as the court pointed out below, that's a distinction without a difference which would require an order from the arbitrator that would have the effect of changing a basic provision essentially. Just taking a step back from all of this, if you think about how people gain these fringe benefits to begin with, there's an entire galaxy of interlocking agreements and collective bargaining agreements set forth such things as how do you qualify for a pension? What's a good pension year? All of those things would be dramatically affected by this. The STA has its members collected in an association so that it can hold together such things as how many hours does someone work under what they call bargaining unit work, which is distinct, for example, if you're out on workers' comp or something like that. So all of the different things that you'd need to qualify to even participate in these fringe benefit plans would be dramatically affected by the fact that a change in the definition of employer would leave an employer presumably able to join the funds, but without any of the other collective bargaining principles at stake. And that's one of the things that when the funds were created, that's why these restrictions were placed upon the arbitrator and similar restrictions about changing the basic principles of the funds were placed on the trustees themselves. So even though this isn't a basic principles case, this is a basic provisions case because we're at a motion dismiss stage. It's clear that lower court acted correctly and that the LMRA just simply doesn't apply with the circumstances as such that there's a restriction on the ability of the arbitrator to make a decision such as the one that the union's asking them to make. Unless there's any other questions, I think that is the entirety of the argument. I can cite to you a case law that supports our position. I think these are very general cases that basically move forward on several long established principles, but one of the clear and long established principles is that arbitration is a matter of contract and a party can't be required to submit to arbitration any dispute that they have not agreed to submit, and that's what we have here. The parties did not agree to submit amendments or modifications of the trust fund agreements to an arbitrator, and I believe that at this point that that is the correct response and that the lower court's decision should be affirmed by this court. Thank you, Mr. Collins. Thank you. Ms. McKesa, you have time reserved. Thank you. Yes, I would like to first address, I believe it was Judge Floyd's question, as to whether the issue of an arbitrator stands in the shoes of a plan trustee was addressed in the district court, and I wanted to highlight, I believe at Joint Appendix 131, what we did argue was we're just asking for a stamp of approval for an arbitrator to either say yes or no. The trustees' proposed expansion to the term employer is permissible in this context. The second thing that I wanted to address in response to Mr. Collins' argument is that the LMRA does not apply in this case, and I just would like to reiterate that it is the union trustees' position that it does, in fact, apply because all of the circuit courts who have addressed this issue ultimately say that 302 applies so long as the trustees themselves have the authority to modify, the authority to address the issue at hand. The last point I want to make is that what the union trustees are ultimately asking is for other employers who work at the Port of Baltimore to potentially be able to contribute to the funds, and if this proposed expansion were to occur, I do want to emphasize that nothing seismic will necessarily happen. For other employers to be able to contribute to the funds, the union would have to step outside of its role as a plan trustee into its role as a collective bargaining agent, enter into a collective bargaining agreement with other employers at the port, and again, this is employers at the port. We're not asking for every single employer in Baltimore or Maryland to be able to contribute. These are employers that essentially do the same thing as the STA member employers. The only difference is that these employers are not members of the STA. From there, the union would have to enter into a collective bargaining agreement with these non-STA employers. They would have to agree to some rate that those employers would be able to contribute to the funds, and then the union trustees would step back into their role as fund trustees, and the funds would operate, and the trustees of the funds would have a fiduciary duty to be able to administer those funds. There are steps that need to happen, and there's no huge change that the union trustees are ultimately asking for in this case. There are steps and stops that need to happen before anyone and everyone would be able to contribute to these funds, as Mr. Collins pointed to. Unless you have any further questions, I just would like to reiterate that the appellants in this case request that the district court's order be reversed, and that an impartial arbitrator be appointed to overhear this deadlock. Thank you. Thank you so much, counsel. I appreciate it. Ms. McKesa and Mr. Collins, for your fine help and your able representation. We can't come down and shake your hand, but nonetheless, we greet you, and appreciate your being here, and wish that you do well and stay safe. Thank you so much. With that, I will ask the deputy clerk to recess the court appellants this afternoon. And wishes to you, Judge Gregory and the panel. Thank you very much. You're welcome. Thank you. Thank you. Thank you. This honorable court stands adjourned until this afternoon. Okay, the United States and the Donovan Court.
judges: Roger L. Gregory, Henry F. Floyd, A. Marvin Quattlebaum Jr.